IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES BYRON STINSON, | ) | |
| on behalf of himself and a class of | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:14-CV-334-WKW |
| | ) | [WO] |
| TWIN PINES COAL CO., INC., and | ) | |
| THE AMERICAN COAL | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this diversity, putative-class action, Plaintiff Charles Byron Stinson has sued Twin Pines Coal Company, Inc. ("Twin Pines") for breach of contract. Before the court is Defendant Twin Pines's Motion to Dismiss or, in the Alternative, to Transfer Count I to Arbitration. (Doc. # 32.) As grounds for its motion, Twin Pines contends that Mr. Stinson cannot recover on behalf of himself or a putative class because he is neither a party to that contract nor an intended third-party beneficiary. (Doc. # 33.) Mr. Stinson opposes the motion. (Doc. # 40.)

Based upon careful consideration of the arguments of counsel, the relevant law, and for the reasons set out in the earlier-filed Memorandum Opinion and

Order (Doc. # 35) granting a similar motion filed by The American Coal Co., the court finds that Mr. Stinson does not have standing to sue Twin Pines for breach of contract because he lacks a legally protected interest in that contract.  Because the court does not have the power to entertain this action, dismissal is required under Federal Rule of Civil Procedure 12(b)(1).[1]  In light of the Rule 12(b)(1) dismissal, Twin Pines's Rule 12(b)(6) motion is due to be denied as moot.

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1441 and the Class Action Fairness Act, codified in part at 28 U.S.C. §§ 1332(d) and 1453. Personal jurisdiction and venue are not contested.

## II.  STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction.  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).   On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

---

[1] Although Twin Pines urges dismissal under Rule 12(b)(6), the arguments for and against dismissal are closely akin to the standing inquiry, and, thus, the arguments are helpful to the Rule 12(b)(1) analysis.

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The Rule 12(b)(1) analysis here takes the form of a facial challenge.   That challenge properly includes consideration of the contract at issue, which is appended to Twin Pines's motion to dismiss.  (Exs. A & B to Doc. # 33 ("Agreement").)

### III.  BACKGROUND

The facts essential to resolution of the motion to dismiss, construed in Mr. Stinson's favor, are as follows.  Beginning in September 2008, Mr. Stinson received high electric bills for properties he owns in Southeast Alabama.  Mr. Stinson blames the increased costs on rate hikes he says resulted from the failure of coal suppliers, including Twin Pines, to abide by their contracts for coal deliveries to PowerSouth Energy Cooperative ("PowerSouth") for electric power generation.

PowerSouth is a "non-profit power generation and transmission cooperative" that sells wholesale power to its member retail electric distribution cooperatives. (Am. Compl. ¶ 3.)   Hence, "PowerSouth generates power[,] and its member cooperatives distribute that power."   (Am. Compl. ¶ 5.)   Covington Electric Cooperative, Inc. ("CEC"), and South Alabama Electric Cooperative ("SAEC"), as member cooperatives, purchase electricity from PowerSouth.   (Am. Compl. ¶ 9.) CEC and SAEC are "non-profit member-owned[,] retail electric distribution cooperatives" that serve rural communities in south Alabama, including the communities (Enterprise and Glenwood) where Mr. Stinson owns three parcels of property.   (Am. Compl. ¶¶ 2, 4.)   Mr. Stinson purchases power from CEC and SAEC to service these properties and, thus, is a member of both CEC and SAEC.

Mr. Stinson alleges that, at some point between January 2008 and July 30, 2008, Twin Pines breached a coal-supply agreement between it and PowerSouth by failing to supply coal to PowerSouth in accordance with the Agreement's terms. (Am. Compl. ¶¶ 7–8.)

Twin Pines's breach of the Agreement "resulted in PowerSouth paying a higher price to other suppliers of coal in order to keep its power plant in production." (Am. Compl. ¶ 9.)   PowerSouth passed those increased costs to its retail electric distribution cooperatives, including CEC and SAEC, which in turn

passed the costs to their own members, including Mr. Stinson, in the form of a 30-percent rate increase, beginning in approximately September 2008.

On April 30, 2013, Mr. Stinson filed this action in the Circuit Court of Coffee County, Alabama, against four fictitious Defendants, described as "those persons or entities who or which failed or refused to provide coal in accordance with their contracts with PowerSouth . . . ." (Compl. ¶ 7.)  On April 7, 2014, while this action was pending in state court, Mr. Stinson amended his Complaint to substitute AMCOAL and Twin Pines for "Fictitious Defendant A" and "Fictitious Defendant B."  In the Amended Complaint, Mr. Stinson asserts claims for breach of contract against AMCOAL and Twin Pines on behalf of himself and "[a]ll individual persons in the State of Alabama who were members of cooperatives that were members of PowerSouth and who paid those cooperatives for power from July 30, 2008 to present."  (Am. Compl. ¶ 14.)  Mr. Stinson contends that he and the putative class "were the intended and direct third party beneficiaries" of the Agreement and incurred damages as a result of AMCOAL's and Twin Pines's breaches.  (Am. Compl. ¶¶ 6, 10.)  On May 7, 2014, AMCOAL removed this action to federal court as one arising under the court's original diversity jurisdiction under CAFA and 28 U.S.C. § 1441.  Post-removal, Twin Pines, who was served in August 2014, responded to the Amended Complaint with the pending Rule 12(b)(6) motion to dismiss.  In support of its motion to dismiss, Twin

Pines has submitted the Agreement and its subsequent amendment.  Mr. Stinson opposes the motion to dismiss.

## IV.  DISCUSSION

Twin Pines filed its motion to dismiss and adopted the arguments raised in its co-defendant AMCOAL's motion to dismiss.  (*See* Doc. # 33 ("Twin Pines joins in and asserts the same grounds as those set forth by [AMCOAL] in its Motion to Dismiss.").)  Subsequently, in a Memorandum Opinion and Order (Doc. # 35), AMCOAL's motion to dismiss was granted under Rule 12(b)(1) on grounds that Mr. Stinson was not a third-party beneficiary to the coal-supply agreement between AMCOAL and PowerSouth and that, therefore, Mr. Stinson lacked standing to bring a breach-of-contract claim against AMCOAL under Article III of the U.S. Constitution and state law.  *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) ("Where . . . jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action."); *see also Avenue CLO Fund Ltd. v. Bank of Am., NA*, 709 F.3d 1072, 1077 (11th Cir. 2013) (citing *Mid-Hudson* for the aforementioned principle).  In his response to Twin Pines's motion to dismiss, Mr. Stinson has acknowledged that the standing issue argued by Twin Pines "is substantially similar to the standing issue presented by AMCOAL's Motion to Dismiss" and that

his arguments were rejected.  (Doc. # 40, at 2.)  Mr. Stinson has not presented a persuasive reason for reaching a different result with respect to Twin Pines's motion to dismiss.  (*See* Doc. # 40, at 3 ("Plaintiff respectfully requests that the Court reconsider its position.").)  After careful consideration of the arguments and the Agreement between Twin Pines and PowerSouth, which properly is part of the Rule 12(b)(1) analysis (Doc. # 35, at 6–9), the court concludes that, for the same reasons articulated in its prior opinion, Rule 12(b)(1) dismissal is required.

To summarize the court's findings, the Agreement governs PowerSouth's purchase of coal from Twin Pines.  It is, as the title designates, a "Coal Supply Agreement."  The Agreement sets out the terms for the sale and shipment of coal and specifies the requirements in terms of the quantity, quality, and price of the coal.  There is no provision in the Agreement that refers to a third party whom PowerSouth and Twin Pines intended to benefit directly from PowerSouth's acquisition of coal.  In fact, the Agreement mentions neither PowerSouth's power-generation operations nor its relationship with its retail electric distribution cooperatives nor the ultimate consumers of the electricity.

There was the potential, of course, that a breach of the Agreement by Twin Pines would force PowerSouth to have to pay a higher price for its coal from another supplier and that down the line – after PowerSouth used the coal to carry out its power-generation operations and provided that power to its member retail

electric distribution cooperatives – the breach could result in increased electricity bills for consumers.  But this potentially adverse economic effect on the end user is too far downstream to infer from this Agreement that Twin Pines and PowerSouth entered into a coal-supply agreement with the intention that Mr. Stinson and other electricity consumers benefit directly from that Agreement.  The Agreement is plain – through its omission of any reference to third parties, much less to electricity consumers – that it was not formed for the direct benefit of Mr. Stinson.

Rather, the Agreement was for the sale of coal, and PowerSouth received the direct benefit by the purchase of this natural resource, as the coal allowed PowerSouth to carry out its power-generation operations.  The benefit to Mr. Stinson did not accrue until after PowerSouth used the coal to generate electric power and sold that power to its member retail electric distribution cooperatives, which then re-sold the power to Mr. Stinson.  In other words, before Mr. Stinson could benefit from the Agreement, the natural resource PowerSouth purchased from Twin Pines had to be converted into electricity and then sold twice, first to CEC and SAEC, and then finally to Mr. Stinson.  At best, Mr. Stinson was a remote, indirect user of a twice-sold, converted natural resource.  He and his proposed class of Plaintiffs, therefore, are "only incidental beneficiaries who claim the loss of an economic benefit based upon the alleged failure of a promised performance by a party contractually bound to another." *Zeigler v. Blount Bros.*

*Constr. Co.*, 364 So. 2d 1163, 1166 (Ala. 1978).   Based upon the plain and unambiguous terms of the Agreement, Mr. Stinson and his proposed class of Plaintiffs are not third-party beneficiaries to the Agreement and do not have a legally protected interest in the Agreement.

Mr. Stinson lacks standing to bring a breach-of-contract action against Twin Pines – in an individual or representative capacity – under both Article III of the U.S. Constitution and state law.   Accordingly, Rule 12(b)(1) dismissal is required.[2]

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Mr. Stinson's action against Twin Pines is DISMISSED with prejudice pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction and that Twin Pines's Rule 12(b)(6) motion to dismiss (Doc. # 32) is DENIED as moot.

An appropriate judgment will be entered.

DONE this 30th day of September, 2014.

_____ /s/ W. Keith Watkins _____
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Even if it is assumed that Mr. Stinson has standing, the Amended Complaint would be subject to dismissal for failure to state a claim pursuant to Rule 12(b)(6).